Case number 20-1422, LSP Transmission Holdings II LLC Petitioner v. Federal Energy Regulatory Commission. Mr. Engelman for the petitioner, Ms. Martin-Stone for the intervener, Ms. Banta for the respondent. All right, counsel for petitioner. Good morning, Michael Engelman on behalf of the petitioner. I'd like to reserve three minutes for review with the first four paragraphs of the order initiating the Section 206 process that FERC began in 2019. I want to start there because those paragraphs demonstrate that the entire purpose of that Section 206 process was to determine whether the balance FERC struck in 2014 between the rights of LS Power, a qualified transmission developer in ISO New England, and similarly situated developers to compete for reliability-based transmission additions in ISO New England, whether that balance between those rights to compete and the potential for reliability concerns arising from that competition, whether that balance was being maintained. FERC made clear in those paragraphs that what it allowed in 2014 as a just and reasonable tariff provision was an exception to be applied only on a limited basis, and it was that limited nature that was necessary for the balance to be maintained between competition and reliability. Well, why shouldn't this court read what FERC did, accepting your point this is not an enforcement action, that the exceptions are for limited circumstances, but the commission went on to define what those circumstances are. So the fact that a number of projects meet all the factors in the exception, as the commission explained on its re-hearing, is not a focus on numbers, your point about what is it 29 of 31 or projects, but rather a focus on reliability and avoiding delay attendant to competition. Your Honor, the response is that FERC is misrepresenting what those criteria were for. The criteria were never to establish that in those circumstances that is limited. The criteria were to My point is, so I get your take on how you want to read it, but the commission says this is a limited exception and it only applies if you meet these five requirements. And so we even held a hearing and we look back at contracts in three different jurisdictions. And one we dismissed because we found no problem. Another one, we ordered corrections to be made because they were not consistent with the criteria. And then we have your case where the commission said, we looked at what the New England is doing and it is following the criteria that we set forth. In other words, I'm trying to distinguish between numbers can't be the end game as the commission has defined it, unless the commission wants to say, well, this exception will only apply to 10% of the contracts and no more. But it didn't say that. It didn't say that in numbers, but it said that in words, Your Honor. And we have to back up a little bit because again, the five criteria were never in and of themselves adjudged to be just and reasonable. The only thing the five criteria were adjudged to be were to ensure that the exception was used in limited circumstances. And it's the limited exception that is just and reasonable. I don't understand. I understand your words, but the commission says, if we're satisfied that you're meeting these criteria, then we're satisfied. And the problem in this case is that's not what it said in 2014. And it's not what it said in 2019 when it initiated the section 206 order, because what it said in those cases or in both of those times was this exception is only just and reasonable if it's used on a limited basis. And the reason it said that is because it was balancing the rights between entities like LS Power to compete and the supposed reliability concern. And the reason it was balancing that right is because in 2014, when it allowed the exception, just the year before, it had stood in front of this court and defended removing all preferences for all preferences related to reliability projects across the country for incumbent transmission owners. And it defended that by saying in paragraph 428 of order 1000A that it didn't matter that it was a reliability project. That doesn't change the commission's obligation to allow competition because without competition, rates are unjust and unreasonable. So in 2014, when everything you have represented is correct, now the commission on rehearing examines these objections and offers an explanation of why it thinks its exception should be understood as it said. Why is that impermissible? Because the commission under the Administrative Procedure Act is required to actually conform with this precedent or unless either it explains it further or decides it's going to change it. And all I'm getting at is why can the court ignore the commission's statement that when we said limited circumstances, we weren't talking about numbers in an absolute term but in a different way as we explain in our order on rehearing. That's all I need to understand here. And the reason is that FERC actually didn't offer an explanation. No explanation on rehearing? No explanation on rehearing. It simply said that notwithstanding that 30 of 31 projects were excluded from competition, we continue to believe that the criteria that you referenced earlier continue to balance the rights of competition and reliability. But it never explained how they balance those rights when the very criteria that FERC put in place to ensure that the exception is only used in limited circumstances don't limit it. And FERC talks about, well, we weren't talking about numbers. There's no other way to look at limited use. No, there is. We know this from statutes and exceptions all the time, that by limited use, what it said, if you meet these five criteria, you get to come into the exception. If you don't, you don't. But numbers is not the focus. That's all I'm getting at. Yeah. The proof in the record, excuse me, let me make two points. I'll back up first to 2014 and 2015. FERC specifically put numbers at issue by saying in 2014, an exception that effectively excludes competition is unjust and unreasonable. FERC said that in 2014. They then put in place all of the criteria to ensure that the exception would be used in limited circumstances. So FERC right there has said that if you completely exclude competition, that's unjust and unreasonable. If you limit competition, or if you use this exception on a limited basis, that can be just and reasonable. And FERC repeated that in the show cause order in paragraph four, where it says it was undertaking a balancing of interest between competition and reliability concerns, and that the balancing led FERC to find, quote, an exception for immediate need reliability projects could be just and reasonable when the application of that exception is limited by the above noted criteria. So FERC, even in the show cause order, in this section 206 initiating order, is confirming that it's the actual use of the exception on a limited basis that's the any of that in its orders on review. Your own quote you just gave me is when limited by the above criteria. So it examines three regional transmission operators actions, and it explained why one, it had no problem, two, it did have a problem, and it directed changes, and three, why it wasn't concerned here. And I guess I understand your point about the numbers speak for themselves, and maybe that's the end of it. But at least FERC didn't think so. And I need to know how the court makes a decision that, what, it was irrational for the commission to define the exception as it did? Well your honor focused on the last of that sentence, which is as by the above noted criteria. No, I was focusing on your sentence. Yes, and the sentence came from FERC. The sentence came from FERC, and it's the application of the exception that has to be limited. Sorry, go ahead judge. I was just going to probe further on this very point. So just stepping back sort of big picture, one of the things that's challenging about this case is it's not, you know, arguing that what FERC has done is contrary to statute. It's sort of one FERC order versus another FERC order. It's FERC in order 1000, and then FERC in closing its investigation here. And what you're saying is, well, those aren't really two equal things. You know, one looking at, let's encourage competition by getting rid of presumptive rights of first refusal, and the other saying, yes, but let's allow an exception to that where reliability concerns are at stake. You're saying, well, there's actually a hierarchy here in terms of authoritativeness, order 1000, because it was a ruling about what's just and reasonable is the baseline. And therefore, the sort of dictate about limitation controls over the five criteria that are identified, which in your view have never been deemed to be just and reasonable. Is that sort of what you're getting at here? It is, Your Honor. And that's exactly the point. And it's the point that FERC acknowledged throughout. So it starts its analysis back in 2014 with order 1000. And in paragraphs 238 and 239 of the 2014 order, that's 143 FERC, 61150, FERC specifically lays out that order 1000 provided rights to entities like LS Power to compete and for reliability projects as well. And this court upheld that right in, excuse me, South Carolina Public Service Authority v. FERC. FERC upheld that, including for reliability projects at pages 78 and 80. And so what FERC does in paragraph 239, it says that's one part of the balance. The other part of the balance is the potential for reliability concerns if competition delays a project. And then from that, what FERC says is, OK, we will allow an exception in limited circumstances, and we're going to impose these criteria to ensure that it's used in limited circumstances. It never said these criteria in and of themselves are just unreasonable. What it said was these criteria are just unreasonable because they will limit the use. And what the record in this case shows is those criteria don't limit the use. And the record shows they never will in ISO New England for a lot of reasons. That are in the record as to the way that ISO New England plans its project. So what we have now is in 2019 and 2020, FERC looking at the same history and saying, yes, we said it's limited use. We repeat that in paragraph three of the show cause order. It's a limited use exception. But even though the criteria we put forth didn't limit its use, the balance is still fine. And what we're saying is that's inconsistent with all of their prior orders. But let me just read from the order on reconsideration. And it says this is in paragraph 23. We continue to find that the five criteria appropriately balance reliability and competition and that the tariff is being implemented correctly, semicolon. The frequency with which the immediate need reliability projects qualify under the exception does not alone provide sufficient evidence that the tariff is unjust and unreasonable. So contrary to your arguments, the commission made that express finding in paragraph 23 on rehearing. And then it talked about its precedent. And it talks about these exemption five criteria to place reasonable bounds on the ISO NE's discretion to ensure the exception would be used only in limited circumstances. Nothing in the record of this proceeding has persuaded us that the exemption is no longer appropriate. For example, the evidence in the record contradicts LS powers assertion. That's a commission, et cetera. So my point is, I thought it addressed directly your arguments and said, we're not persuaded because we continue to think we continue to think. And one of the questions I have is your challenge is across the board. It's not as though you were bidding on something and or even said you wanted to bid on something or your client wanted to bid on something and you were unable. And it turns out that this is just a total misapplication of these criteria. In other words, what FERC explained on rehearing, I mean, you may not be persuaded and I understand that and maybe the court won't be, but at least FERC directly addressed your arguments and said, we disagree. And it explained why it disagreed. And so the fact that it said things as you interpret them in order 1000, and then in order to show cause, it seems to me what the commission says is we don't find anything inconsistent here. And that's precisely the problem, your honor. All right. And your evidence is numbers. No, pointed to the fact that the new England ISO is not properly applying the criteria. The commission found it was. And again, that's exactly the point. If the criteria are intended to limit the use and ISO New England is appropriately applying the criteria. Limit the use, counsel, is numbers. FERC's limit the use is different. And I'm trying to understand why that's either arbitrary and capricious or, you know, excessive, sorry. Because your honor, I'm sorry to interrupt you, but I interrupted you. It's because FERC never identifies what limited use is if it's not numbers, because what FERC said in 2015 is if you effectively exclude competition, then that's unjust and unreasonable. They said that that's unjust and unreasonable. We have effectively excluded competition in ISO New England by using these exceptions. While FERC says what it says in paragraph 22, it doesn't actually back up that, that blanket statement that we continue to believe that it balances. That's the point. The commission has said, we held a hearing. We looked at what the New England ISO was doing. We are satisfied it is appropriately applying the criteria, because now we understand how it does its analysis and why its projection operation date is either going to be too early or too late. And it says, now that we understand that, we are satisfied. And again, FERC says that we are satisfied now that we understand that. But that goes against everything it said in 2014 and 2015 when it was balancing competition and reliability. My point is that if Congress passes a statute that says anybody who's over 21 and I don't know, went to Harvard Law School in the 60s can bring this lawsuit. And we anticipate this is going to be a limited opportunity. In fact, everybody in the 60s files. Numbers is irrelevant, says FERC. What we're looking at is this balance. And we have examined the records in the New England ISO to look specifically at what you're complaining about. And we don't find the error that you speculate exists. And whether you look at numbers or some other factor, what FERC has failed to identify is the balancing it did. There's nothing in the order that shows that it balanced competition, because there's only been one project for competition. So there's no balance on that side. On the other side of the balance, which is the supposed reliability concern, it also didn't identify the fact that none of these projects that were supposedly immediately needed made it in service by their need bag date. So the presumption that- FERC directly responds to that in paragraph 30. It responds without giving an answer that actually addresses the issue. It gives an answer, counsel. What it doesn't do is, as I understand it, and neither do you. You're not attacking any particular project and saying, well, in fact, the New England ISO did not apply this criteria properly. All right. Let me just circle back on this same train. So what's your response to the notion that FERC limited this exception in order 1000? It limited it not quantitatively, but to bona fide reliability concerns. And maybe it misforecast how often those reliability concerns would be present. And I take you to be saying, yeah, but look at how the service dates are shifting and it's allowing this exception to be applied where there aren't really bona fide reliability concerns. And to that, I would say that is really in the heartland of FERC's agency expertise. And given that it's identified criteria, given that it's blessed the application of these criteria and saying that the frequency alone is not evidence that it's unjust and unreasonable, it just seems hard for us to leap into the fray and second guess that. And we're not actually asking you to second guess that. But I want to go back because you started that that order 1000 said there may be these extreme liability issues. Order 1000 didn't actually say that. Order 1000 said compete all projects with a few exceptions that aren't relevant here. Compete all projects, including reliability projects. It was only on the compliance filing with order 1000 that ISO New England came in and said, yeah, order 1000 said compete all projects, but we're really concerned about these reliability issues. And FERC balanced that and said, yes, but order 1000 required competition. So we have to respect that. And the way to respect that is to ensure that any exception for reliability is only done on a limited basis. And what we're asking you to do is to not jump into the fray of reliability or not reliability. The record is very clear. There has not been a single instance of a reliability concern, notwithstanding that multiple projects didn't go online by their need date. Respectfully, counsel, that's begging Judge Pillard's question, it seems to me. Because the very thing you want us to tell FERC is, actually, the way to do this is to limit the numbers. That's not our focus. That's not exactly what we want you to do. We want you to send it. You just said, I'm quoting you, quote, the way to assure this is to limit the number of projects where competition is eliminated. Well, what we want is for you to send it back to FERC to say, in 2014 and 2015, you said that this would only be just and reasonable if it were limited in use. It has not been limited in use, and you haven't fully explained that. And to send it back for FERC to actually explain. And if it comes to a different conclusion today, then we may be back to what is said in 2014, which is we have to balance competition and these reliability concerns. It hasn't done that in these orders. I have just one question about standing. And I know it's an unpublished judgment, but in 2017, we held no standing because you hadn't specifically identified a project that incumbents actually accepted and that therefore you were deprived of the opportunity on which to compete. And that hasn't been spelled out here. Why is that not a standing defect? Here, it's because in that case, LST transmission VFIRP, we had the opportunity to put in a proposal or the opportunity that a project would come up and the exception hadn't been used. In this case, the exception has been used 30 out of 31 times. The incumbents have accepted in each one of these cases? They didn't have to accept. They were given the project and told to build it. There is no opportunity to bid. We can't say we want to do this project. They have a right of first refusal and they accepted the right of first refusal is what I'm Absolutely. They accepted the right of first refusal. And the record is that the exception will continue to be used in the same way going forward. ISO New England at JA56 specifically says that it is implemented as intended, meaning it's going to continue to exclude projects in the future. So in this instance, we meet what was said in LST transmission, which is we have been issue. It's actually FERC's order terminating the show cause in the rehearing order. This specifically harm us because in our view, and granted, Judge Rogers may have a different view based on comments, but in our view, in the order, I understood. Sorry. In our view, in those orders, FERC actually changed the balance and it changed the balance to harm LS power because the old balance is we have the opportunity to compete. But the reality is there's not that opportunity to compete because of the way the exception has been implemented. Before you conclude, I have a couple of questions. The first is the three-year rule that we're discussing here. Is that unique to ISO New England or does it apply to other regional ISOs? So it applies to the PJM RTO, but differently, and it applies to SPP, the Southwest Power Pool RTO. All of those were implemented on compliance with order 1000. Okay. Well, that leads to my next question. The 206 proceeding here, whether you call it an investigation, an inquiry, or just a proceeding, the topic, at least as concerns ISO New England, was compliance with the three-year five criteria rule. And FERC found that there was compliance. Your position, as I understand it, is not to challenge that, but to say, well, you should have reconsidered the rule itself. But wasn't that beyond the scope of the 206 proceeding here? No, your honor. In paragraph one of the show cause order, FERC specifically said that it was reviewing the justness and reasonableness of the competition exception it had allowed. And it went on to say- As implemented. Well, it's- Isn't that right? The whole thing was called a compliance hearing, which deals with not with, we have a doctrine, which I'm sure you're familiar with, not a doctrine, but a method of talking about a challenge to something on its face and a challenge on a rule or a regulation or a statute as applied. And it seems to me that the gist or the thrust, at least, of this proceeding is an as applied challenge. And I've read some of your pleadings, and I guess you tried to tee up the question of the legitimacy of the three-year five criteria rule on its face. But it seems to me that FERC gave that the back of the hand because they weren't interested in it, particularly at this stage. And if you- And I know this is a long question, I'm sorry for that. But the other point would be that if you had a problem with the rule on its face, you certainly were entitled to bring a 206 action, were you not? We were. And I think that's the point. In a 206 action, under section 206, FERC is obligated to address, it shall determine a just and reasonable rate if it determines that a rate is unjust and unreasonable. Once it started the 206, it's our view that it was looking at all aspects of this rule. And whether you look at it as applied or not, FERC said it would be just and reasonable if it applied in a limited circumstances. Now, FERC's saying, well, they applied it as we said, but that's not accurate because it wasn't applied on a limited basis. Okay. Yeah. You're going over ground. You've already plowed. I get it. I get it. Okay. Thank you. All right. Why don't we hear from FERC? Your Honor, there was a- I'm sorry. You want intervener? All right. Let's hear from intervener. Good morning, and may it please the court. Amber Martin Stone on behalf of Intervener Massachusetts Municipal Wholesale Electric Company. My client is an organization of consumer-owned utilities that want to reap the benefits of competition. Competition lowers costs and encourages innovation in transmission development. And what is wrong with what FERC did? So, Your Honor, FERC says competition is supposed to be the rule, but in New England, it's plainly the exception. And that is unjust and unreasonable and inconsistent with Order 1000. You said before, Judge Rogers, that numbers can't be the endgame. But the point here is that the numbers show exactly why this exemption is unjust and unreasonable. And let me- No, but the Commission on Rehearing explained why that is a misunderstanding of the exception, that it was not mere numbers. All right? So, you have to tell us why FERC's explanation on rehearing, it seems to me, was either beyond its authority or somehow other legally erroneous, given the core nature of the determination by FERC in light of its expertise and experience. So, FERC says that the numbers are irrelevant, but that begs the question, what would be enough evidence to show that this exemption is not working? You've heard that 30 out of 31 projects were exempted from competition. And I want to look a little bit closer at the record here. So, if you look at pages 58 through 61 of the Joint Appendix, that shows that 28 out of those 31 projects were allegedly needed in 2016 or sooner. And FERC explained specifically, having received a further detailed explanation from the New England ISO about how it assesses need and why those sort of operation dates are either going to be too soon or too late. You're right, Your Honor. FERC does explain that ISO has demonstrated why those need by dates are too soon or too late. But the record also shows that reliability is not imperiled by that delay. So, the system operator identifies needs on a conservative basis. Well, actually, FERC disagrees. All right. And explain why, because this exception is not focused on numbers. Your Honor, FERC can say that the exception is not focused on numbers, but the data before it show that the exemption is not working. And that's because there's a- In your client's view, as opposed to the Commission's view. That's what I'm trying to get over here, counsel. What is it, other than the numbers, that you say, here the exception swallows the rule? That's essentially your argument. That's right. There cannot be a situation such as there is in New England. And FERC says we beg to differ. And it explains why. And so, what is the court supposed to do with that analysis? That's what I understand. I understand your client's position. I understand the position of the petitioner. But exactly what do you see the court's role here? To say, well, we've read it. We disagree that the numbers, that's the end of the game. Judge Rogers, I would quibble a little bit with the premise of your question. You say that FERC has explained why this exemption remains just and reasonable. They, in several paragraphs, simply assert that they disagree with the- No, no, no, no, counsel. With all due respect, read the reorder hearing. It doesn't simply assert. It says why. It explains in some detail. And you may disagree with that. But it's not as though FERC just said we disagree and moved on. Help the court here to understand your client's position. We can't ignore what FERC's orders say. But maybe they're defective in some way. That's right, Your Honor. So you can't ignore what FERC's orders say. But what FERC's orders say here do not connect with the evidence that was put before it. The exemption- What evidence? The evidence that of the 31 immediate need projects- Back to numbers. And FERC said it examined in detail how the New England ISO was evaluating need. And now that it understands that process, all right, the concern it originally had that caused it to initiate this Section 206 inquiry has been resolved. But, Your Honor, that only goes to ISO New England's compliance with the tariff as it exists. As Judge Randolph noted before, there is also a question of how the exemption is working in practice, how the tariff is being implemented. And further- Looked at. And its order on rehearing says it looked in three different regions. One, it found no problem. Another, it found a problem and ordered that adjustments be made. And then in New England, now that it understands how the assessment is made, it was satisfied. That's all I'm getting at. But only in New England, Your Honor, was there a showing that there was nearly no competition in competitive development of reliability projects. And we also have a circumstance where the structure of this process means that the exemption, those data are not going to change going forward. So, since the system operator does not conduct annual needs assessments, it studies needs as they arise, we have a situation where we're identifying needs without any real opportunity to compete for the solutions to solve those needs. So, why didn't your client file its own 206 complaint? Well, Your Honor, the Commission had already instituted a Section 206- But it said it was only addressing concerns it had. And depending on whether those concerns were resolved or not, then it would proceed appropriately. Counsel, I've taken up a lot of your time with my questions. Is there some point you haven't made that you want to make? I would just say that the bottom line is that in closing this investigation, FERC ignored much of the evidence in front of it and left in place an exemption that erects a nearly insurmountable barrier to competition in the region. That's inconsistent with FERC's determination that competition is supposed to be the rule. And Ellis Power's petition for review should be granted, and FERC's order should be remanded to the agency to re-examine the evidence and reach a defensible conclusion on each of the orders on review do not do so. Thank you. Thank you. All right. Counsel for FERC. Good morning. Carol Danza for the Commission. I would have started with paragraph 23 in the rehearing order, but I would also like to point the Court's attention to paragraph 60 in the termination order, which begins at JA-373, where the Commission explains, consistent with going all the way back to Order 1000, that the Commission is focused not on the numerical outcomes, but on the process. It was always interested, in this case, in the processes that these regional organizations were using. And by the way, Order 1000 also said quite a bit about the different regions having their own unique processes, and I have quite a few sites for that if it's useful. But on the process versus substantive outcomes, in this order, the Commission cites Order 1000, paragraph 12. Order 1000 also said it in paragraph 113. It said it again in 1000A at 188 and 285. And this Court even cited it in the South Carolina decision at 762 F-38. So from the start, the Commission has looked at the principles that it laid out in Order 1000, and the procedures that it examined in the various regions' compliance proceedings, as what is the process that you're going to use to comply with these principles? And we have an expectation of what the outcomes will be, but it's based on the process. So in the show cause order... What was the page again in the joint appendix that you cited? Paragraph 60 of the termination order. That was at 373 and 374 of the joint appendix. Thank you. Of course. And so going back to the show cause order, the Commission, as part of its ongoing oversight, because it does have a responsibility that it takes seriously to oversee its regulatory initiatives, including Order 1000. So what it had available was as well as public websites and information that was available to anyone. So from the 10,000-foot view, the Commission really was only seeing outcomes. And it had some concerns. It wanted to see if the processes were being used properly. So it issued a show cause order invoking its procedural rule 209, which is 18 CFR 385.209, where the Commission can direct a person, here being the organizations, to explain themselves. And it said to these regional organizations... At the time, there were three organizations that had this exception. PJAM was the one that had been granted first. I don't know exactly when Southwest Power Pool was granted, but the New England one was granted, partly using the three years that the Commission already adopted in PJAM. Since then, the Mid-Continent Operator has also added the same exception. I believe an appeal regarding that is in front of this court in a couple of weeks. I believe in the adoption. The initial adoption is what's before the court. So there are now four organizations that have this exception, all using the same criteria and the same three years, although they all have their own separate processes. So the Commission's show cause order says each of the three that have it, come to us, explain our process, explain how you're implementing these criteria, explain what we're seeing. And the Commission actually said, explain to us that your implementation remains just and reasonable. Now, of course, that is not the standard that the Commission... Had it ever made it to a step one finding under section 206, it would have had the burden to show that they were unjust and unreasonable. But under the show cause regulation, it says to these entities, explain why your tariff remains just and reasonable the way you're applying it. So they came in... The petitioner is arguing, as is intervener, that as a result of what the Commission has allowed, there is literally, virtually no competition in New England for these reliability contracts. And that's just totally inconsistent with any fair understanding of what the words limited exception mean. And while FERC on rehearing can say, well, we weren't thinking of numbers. We were thinking of the process because we're concerned about getting these projects in a basis where they can become operational. And we're satisfied that everybody's following our rule. And we're satisfied that applying this rule with the exceptions, the tariffs remain just and reasonable. But the argument is you've got a whole region of the FERC overarching obligation. Well, I would continue in the same paragraph 60 that I pointed to before, and this would be on JA 374 now, that the Commission had gotten into the weeds of New England's process and the way it identifies the reliability needs in its needs assessments, which are rolling reviews that it that it does needs assessments for. And they tend to be driven by certain things happening, both the Southeast Massachusetts, Rhode Island one, and the Boston 2028 needs assessments were driven by retirements of particular generating resources in those regions. At the time that New England responded to the show cause order, it had completed two needs assessments. There were others in stages in the works, but two had been completed and gotten to the point of identifying not just the reliability needs, but the projects developed as solutions to address them. And one of them had led to, and these are the first two needs assessments that had been completed since the approval of this exception in 2013 or 14. And the Commission said of these two, we're encouraged that one of them led to the region's first competed project. And that's all in paragraph 60. I think it's discussed elsewhere too, but the Commission was pointing to this. It's not looking at in terms of 30 projects and one, it looks at the needs assessments that address the number of needs that resulted in a number of projects, but between these first two needs assessments of however many, it had already resulted in a competed project. So it is not actually, it's not accurate to say that none of these reliability projects can be competed because it shows. Well, one out of 30. All right. That just doesn't seem to be consistent with the notion of a limited exception. Well, I think the Commission looked at it as one out of two, because out of two needs assessments, a project had come out of one of them. But the other answer to that is that the Commission had New England and it's all in the joint appendix early on after the show cause order that New England put in quite an extensive narrative explanation of its process and how it works and a list of all the projects and what the reliability needs were. And with quite a bit of detail, even more than we need to go into. So the Commission looked at all that, what kinds of projects are these being used for? And I don't think anyone has pointed to particular projects that, well, that one looks wrong or that one could have been competed, but the Commission needed an understanding of how the need by dates were being developed. And the answer under New England's process is that the need by date, and that's not even a specific project. That's a need that's identified. It could be that a single need could be, two needs could be addressed by one project. A need doesn't necessarily translate into one on a one-for-one basis, a project, because the next part of the process under the tariff is the solution study or the competition to develop projects. But in the needs assessments, the reliability date is tagged as being the date that the needs assessment, well, if it's not a future need, it's tagged as being the date the needs assessment is completed and posted. And that's why all of these projects had the same need by date. And in particular, the Northeast operator explained how it identifies the reliability needs, short circuit needs versus peak load needs. If it identifies a future reliability need at a minimum load, or I guess when it identifies a reliability need based on minimum load, that's considered something that could happen now under current system conditions. So, that's considered needed as of today. But all of that was in New England's explanation and the Commission recaps quite a bit of it in the orders. You really get it got into the weeds of each region. So, the next step here that petitioner and intervener and others may want to file 206 or rulemaking. They certainly, I don't know the procedure for. Well, I'm trying to understand the picture we're getting is that, you know, FERC looked at all this and said, everything's fine. But say the petitioners and intervener, well, maybe on the ground, it looks okay when you get into the details, but looking region wide, there's no competition. Well, we certainly don't have. Well, we don't have the record here to say that. But yes, they absolutely have the right to file a 206 complaint if they feel they can meet that burden. And in particular, to the extent the argument is about how the Northeast region conducts its process and changes that should be made to its tariff, the Commission explicitly held that that's beyond the scope of this proceeding. But it certainly could be within the scope of another proceeding that could indeed be a 206 complaint. All of this was the Commission determining for itself, whether it saw sufficient evidence for it to move forward on its own initiative. I'm sorry, but could you repeat what you just said? What was beyond the scope of the proceeding? Oh, I'll find the exact. For instance, in the hearing order at paragraph 26, to the extent some parties were arguing about the reactive nature of the New England process or the fact that they don't do it every year or every two years, but the way they do their planning cycles, which the Commission explained in quite a number of places in orders 1000 and 1000A, that it wasn't going to tell the different regions, you have to do it this one size fits all because every region has its own characteristics and its own needs and its own stakeholders. And the Commission was very respectful of each region being able to develop its own processes, which of course, the Commission does have to look at them. And it did in the compliance proceedings. In fact, in the New England compliance proceeding, it did order changes to the planning process. Before you go on, what we have before us is just the New England order. I mean, that's the issue on this petition for judicial review. But the 206 proceeding or inquiry was against two others. Has the Commission rendered opinions and orders in those two other matters? Yes. And we discussed those in our brief. And I think Judge Rogers was referencing them earlier at the time discussed in the rehearing order. Right. And as the Southwest Power Pool, the Commission issued a fairly short order saying we're satisfied by the explanation. No one sought rehearing and nothing further happened with that. As to PJM, the Commission in fact found that as the second, third and fourth criteria, which all have to do with transparency and stakeholder involvement. It found in the PJM order, which we did cite in our brief, and it is cited. I don't have the exact site in the J, but it's referenced in the rehearing order. It is. I may not have the exact spot flagged for that. But in the PJM order, the Commission said PJM is not, we find that PJM is not complying with these criteria and must amend its operating agreement. It wasn't under the tariff. It was the operating agreement. PJM made a compliance filing, altering its procedures under its operating agreement. The Commission approved that on rehearing compliance. The only rehearing sought in that case was I believe by LSP or an affiliate that wanted more far reaching changes to the criteria. And as far as I know, no one sought judicial review of that set of orders. Okay. Thanks. All right. Anything further? Uh, um, no, your honor. I believe I believe that's it. Thank you. Thank you. All right. Council for petitioner. Thank you, your honor. Just a couple of quick points. Um, counselor Banta indicated that what this was about was the process. Well, that's absolutely right. There's absolutely right. Uh, the process doesn't work. The process that FERC said doesn't do what FERC said. You've got to help me here. I mean, the council disagrees with that argument and explain why. And so if the problem is that there's virtually no competition on these reliability projects in the New England ISO region, then I don't understand where the Commission said it wasn't going to deal with that right now. What it was going to look at was concerns it had. It was going to address those first. It did. And it concluded there was no need to amend its rule. Well, you disagree for various reasons. Why wouldn't you file a 206 proceeding then seeking a revision if the proof in this case isn't sufficient for the court to send it back for FERC to change the rules? Well, hypothetically, counsel, hypothetically, so one can envision a 206 and it would be on one of two things, either the process as a whole or individual projects, as Judge Randolph asked earlier. With respect to individual projects, these are identified as projects that are needed somewhat immediately. Now, one can question that, but the ability to file a complaint, get a ruling from FERC, seek re-hearing, come up to the court and get a ruling on that on a particular project is almost insurmountable. That project would be so- Well, counsel, it's what, insurmountable because of cost and delay? No, because the project would be so far along in its engineering and production that it's not going to be eliminated. So you can't really challenge an individual project. So the order you're seeking from this court is the numbers underlie the rationality of FERC's order on re-hearing? Yes, Your Honor. And you noted, I think it was you that noted that the numbers follow the rule. That's exactly right. The first criteria in the ISO New England criteria is the need by date. The record proof is clear that the way that ISO New England does its planning, the need by date is almost always going to be immediate. So you want it to change its planning process? Well, we want, no, we want FERC to change that criteria to get back to what it said would be just and reasonable criteria that limit the use. And we want you to send it back- By limit the use in terms of numbers. So that if you're going to have 30 projects, you can't have 29 of them not subject to competition. That's correct. And Councilor Banta mentioned that one project was competed. The record is clear that that was an anomaly. Now she made another point. You know, that they were dealing with two assessments and it wasn't like a single project. It was in that area. So it's like one out of two. Well, yeah, her point was that there had been competition in that. And the record is clear that that competition resulted from an anomaly because ISO New Otherwise, it would have fallen into the exception as well. That's a JA-226. So I know, but it's an anomaly. So I guess I don't understand why all this wouldn't have been reason for your client to say you need to change this. And we want to bring us a 206 proceeding now that you have satisfied your own concerns. We don't believe Section 206 allows FERC to say these are our concerns versus somebody else's concerns. Well, it certainly authorizes the commission to file a 206 proceeding. Which it did. And it doesn't say that it's limited in doing so to these two matters. And FERC was very clear. All right, from the first order, where it clearly said what it was going to look at. And it concluded that having looked, it was satisfied with the exception it had. And you're just saying it's counterintuitive to have this result? It's counterintuitive based on the record in this case to have this result. No, but see, that's my point, counsel. The record in this case, the only record that makes it counterintuitive that you've proposed is that it's 29 out of 30 or 31 projects. FERC has said the record here shows everybody's complying with the standards. And those who aren't, we've directed changes and they've made the changes. And FERC said in 2014 that those standards are only just unreasonable if they limit the use of the exception. Okay, we've been over this. Anything new? I have a question. Yes, Judge Randolph. Yeah, why don't you, I'm not sure you completed your answer for the reason, with respect to a particular project, it's impossible to file a 206 complaint for your company to do it. And as I understand it, the reason is the project will have been underway and the proceeding will take some time. And by the time it's completed, no matter which way it comes out, the project is probably already built out. Is that right? That's correct, Your Honor. The way the process- Why can't you ask FERC to issue a stay? Theoretically, we could, but FERC, I think based on the record, has rarely if ever done that. Well, maybe so, but now you've got a situation where you're saying basically no competition in New England and you want to issue a stay in this particular project and let us- You wouldn't ask for a stay of a project that's being built because of an immediate reliability concern. That's where I was going, Your Honor. These are supposedly immediate reliability- How are you supposed to get your issue before the commission? The court often issues stays where the parties on one side or the other think it's impossible. I'm just trying to think of ways, or the commission could say, we're not going to issue a stay or we're going to issue this because we think it's better allowing the project to go forward subject to the condition that we will develop in the course of examining your client's 206 complaint. I appreciate the thoughts. I think it would just be because these are reliability projects and FERC, even in this proceeding, has put reliability over every other concern, including what it said it was balancing, which is competition, that the ability to get a stay in this situation would be insurmountable. I just gave you an option. I understand that, Your Honor, but the court- And FERC does that in a number of situations and the project developers take their chances. Understood. Okay. Anything further? No, Your Honor. Thank you very much, counsel. We'll take the case under advisement.
judges: Rogers, Pillard, Randolph